PEOPLE v. KANAR.

1. CONSPIRACY—OBSTRUCTING JUSTICE.

In prosecution of mayor and others for conspiracy to obstruct justice uncontradicted testimony of prosecution's witnesses supported claim that conspiracy was shown.

2. SAME—OBSTRUCTING JUSTICE—PARTICIPATION.

In a prosecution of a mayor and others for conspiracy to obstruct justice under count of information which does not charge that defendant received money, whether he actually did receive money or directed its disposition is not of con-

trolling importance, the query being as to whether or not he knowingly and wilfully participated in the conspiracy charged.

3. SAME—OBSTRUCTING JUSTICE—QUESTION FOR JURY.

The inferences to be drawn from the testimony in a prosecution for conspiracy to obstruct justice rested in the determination of the jury where there was evidence tending to show existence of the conspiracy, connection therewith of certain named defendants, knowledge of appellant mayor that efforts were being made to enable operation of houses of ill fame and gambling establishments, relations between appellant and certain conspirators, including police officers whose selection he approved, and manner in which the conspiracy was carried out, hence motion for directed verdict was, as to such count, properly denied.

4. SAME—OBSTRUCTING JUSTICE—INFERENCES.

In a prosecution for conspiracy to obstruct justice permissible inferences may be drawn from what was actually done, construed in the light of the manner of performance.

5. SAME—CIRCUMSTANTIAL EVIDENCE.

A conspiracy may be shown by circumstantial evidence, and a finding that the offense has been committed may be based on legitimate inferences from established facts.

6. CRIMINAL LAW—CONSPIRACY TO OBSTRUCT JUSTICE—PRELIMINARY EXAMINATION—PREVIOUS TESTIMONY—VERITY—TRANSCRIPT AS EVIDENCE.

Question as to whether previous testimony which a witness had given at the preliminary examination and at ouster proceedings of defendant mayor could be regarded as competent as substantive proof against him in prosecution for conspiracy to obstruct justice was not before Supreme Court where record does not disclose that verity of such testimony was shown and the transcript thereof was not introduced in whole or in part.

7. SAME—TRANSCRIPT AS EVIDENCE.

A transcript of testimony may not be introduced in evidence in a criminal case until proven by the stenographer.

8. CONSPIRACY—INSTRUCTIONS.

In prosecution of a mayor and others for conspiracy to obstruct justice, instruction to jury which ignored the necessity of finding the existence of an unlawful combination or agreement constituting the offense of conspiracy and which permitted the jury to be misled into confusing the essential elements of the conspiracy and which was not subsequently corrected was prejudicial error.

9. Criminal Law—Instructions—Curing Error.

In a prosecution for crime if an erroneous instruction is given on a material matter and the error is not corrected or cured in the charge, such error is regarded as prejudicial.

10. Same—Supreme Court Presumes That Erroneous Rather Than Correct Instruction Was Followed by Jury.

Where conflicting instructions are given, one erroneous and the other correct, the Supreme Court must presume that the jury followed the erroneous instruction.

11. Same—Trial—Instructions—Duty of Court.

In a criminal case the trial judge should, even though no request be preferred, give instructions covering the general features of the case, define the offense, and indicate what it is essential to prove to establish the offense.

Appeal from Wayne; Richter (Theodore J.), J. Submitted January 17, 1946. (Docket No. 83, Calendar No. 42,384.) Decided April 1, 1946.

Walter Kanar was convicted of conspiracy to obstruct justice. Reversed and remanded for new trial.

*William Cohen* and *Morris Luskin,* for appellant.

*John R. Dethmers,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Daniel J. O'Hara,* Assistant Attorney General, for the people.

Carr, J. Defendant Kanar was tried in circuit court before a jury on an information containing two counts, each charging conspiracy to obstruct justice. The first count alleged that on January 17, 1939, and at other times between said date and August 21, 1941, defendant and other named defendants conspired together and with persons unknown, wilfully and corruptly, to assist and enable the maintenance and operation of houses of ill fame and gambling establishments in the city of Ham-

tramck in violation of the laws of the State of Michigan and the ordinances of the city. The second count incorporated the material portions of the first, further alleging the unlawful purpose on the part of the alleged conspirators to procure the wilful and corrupt failure and neglect on the part of defendant Kanar and other named defendants, who were police officers of the city, to perform their respective official duties in the enforcement of the criminal laws of the State and of the city in relation to prostitution and gambling. The second count further alleged that as a result of said conspiracy certain houses of ill fame and gambling establishments were operated within the city; and that gifts and gratuities were presented said public officers, and accepted by them, by way of consideration for the unlawful agreement.

It appears from the record that one of the defendants named in the information, Isadore Green, pleaded guilty and his plea was accepted. The case was dismissed as to certain other defendants, with the result that defendant Kanar was tried alone. At the conclusion of the proofs, a motion for directed verdict in his favor was made and denied. Thereupon a motion was submitted to require the prosecutor to elect on which count of the information he would proceed, and this motion was also denied. The case was submitted to the jury on both counts and a verdict of guilty returned on each. Sentence was pronounced in accordance with the verdict.

On behalf of defendant a motion for a new trial was submitted to the trial court. Said motion was denied but the court on its own motion vacated the sentence and set aside the verdict of guilty on the second count on the ground that the evidence was insufficient to warrant submitting to the jury the question of defendant's guilt under said count.

Sentence was then imposed on the first count and defendant has appealed.

On behalf of appellant it is contended that conviction on the first count should be set aside, and defendant discharged, on the ground that the competent evidence of guilt on the trial was insufficient to warrant submitting the case to the jury and, consequently, insufficient to support a verdict of guilty. In view of the uncontradicted testimony of the witnesses for the prosecution any claim that a conspiracy, as charged in the first count, was not shown, would be clearly untenable. It is insisted, however, that the prosecution failed to establish, by the requisite degree of proof, that defendant Kanar was a party to the conspiracy, or that he took any part whatsoever in furthering its purposes.

On behalf of the people it is argued that the evidence offered on the trial clearly established appellant's connection with and participation in the conspiracy, that the facts and circumstances disclosed negatived any hypothesis of innocence on his part, and that his acts, statements and conduct generally, interpreted in the light of his relations with certain other alleged conspirators, named as defendants in the information, and whose guilt is, on the record, not open to question, established appellant's connection with the offense of which he has been convicted.

Particular emphasis is placed on evidence tending to show close association between appellant and Michael Figurski, who was, the proofs indicate, the central figure in the making and carrying out of the conspiracy charged. Figurski was not an officer of the city but the record indicates that he had some measure of political influence, sufficient at least to impress other conspirators with whom he dealt. It is the theory of the people that defendant Kanar be-

came connected with the conspiracy through his relations with Figurski and that his participation was carried on quite largely through Figurski.

Appellant was appointed mayor of Hamtramck in January of 1939 to fill a vacancy then existing in that office. Subsequently, he was elected. It appears from the testimony of Figurski that prior to appellant's appointment he (appellant) sought the support of Figurski, whom he knew and who had been a contributor to his political campaigns. We quote from Figurski's testimony:

"I recall the early part of January, 1939, when Dr. Tenerowicz had left the city and gone to Washington to take his seat in the United States Congress. At that time, while Dr. Tenerowicz was in Washington, I had a conversation with Walter Kanar about Walter's going to Washington. I can't tell you the dates, but it was somewhere in that time. I don't remember where this discussion took place. We were at a bathhouse on Oakland avenue, and I guess that is where it took place. He told me if there was going to be any money made, well, it would be just as much convenient for him as it would be for me. I gave him either $300 or $400 at that time. After he got this money, he went to Washington. That is what he told me."

The witness further testified to conversations between himself and defendant Kanar with reference to the appointment of a chief of police and also with reference to permitting certain gambling operations. Such testimony indicates that defendant knew that efforts were being made to permit various illegal businesses of the character referred to in the information to operate within the city of Hamtramck. Along this line Isadore Green, who was one of the defendants in the case and who pleaded guilty, testified that he talked with defendant on two or three

occasions, insisting that he should be allowed to operate a gambling establishment because he had supported defendant in the election, and was finally told by defendant to see Figurski. The witness further testified that he went to Figurski twice and on the second occasion was told that he (Figurski) had orders to allow Green to operate, which Green then proceeded to do without interference by police officers.

It is in evidence that on April 1, 1939, certain houses of ill fame and gambling establishments were permitted to open. About that time Figurski collected $3,000 from Thomas Bradley and Elik Gell, both of whom are named as defendants in the information. With reference to such facts Figurski testified:

"I went and told Kanar I had this money. I told him I promoted this money and he asked me how much of that money I thought I should get. Well, I thought — I left that to him, so he offered me $200, and I told him that $200 wasn't quite enough for me, I thought I should get more, and we talked back and forth, and then he finally agreed I should take $400. We kept talking back and forth, and he says — well, he wanted me to take $200, and then finally he agreed with me on $400. Before that, I wouldn't take $200, and I told him I thought I should get more. When I said I wanted more, he mentioned the name of Alex Gell; he said he could get Alex Gell to do it for nothing. I didn't say anything. We just argued back and forth, and then he agreed that I could keep $400.

"Q. So you kept $400 and there were $2,600 —

"A. When he says I could keep the $400, then he asked me where I got the money. I told him that I had the $1,000 from Tom Bradley and $2,000 from Alex Gell, and when I told him that, he refused to take the money."

Figurski further testified that he gave the money in question to Henry Kanar, defendant's brother. The testimony above quoted indicates that defendant Kanar raised no objection when advised by Figurski that the latter had "promoted" the sum of $3,000. It is a fair inference, also, that Figurski took the money to defendant for the purpose of delivering most of it to him, after deducting what he considered a reasonable amount for himself. It is significant that the discussion between these two men had reference to the amount that Figurski was to keep; it was not until defendant was advised that Bradley and Gell had paid the money that he gave any indication that he would not accept it.

Under the first count of the information whether he actually received the money or directed its disposition is not of controlling importance. Rather, the query is, whether he knowingly and wilfully participated in the conspiracy charged.

The inferences to be drawn from the testimony rested in the determination of the jury. A recital of other details of the evidence would tend merely to corroborate the existence of the conspiracy, and to explain the connection therewith of certain of the named defendants; the knowledge of defendant with reference to efforts that were being made to enable houses of ill fame and gambling establishments to operate; the relations between defendant Kanar and certain of the conspirators, whose guilt clearly appears, including police officers whose selection he approved; and the manner in which the conspiracy was actually carried out. Permissible inferences may be drawn from what was actually done, construed in the light of the manner of performance. It is settled by prior decisions of this court that a conspiracy may be shown by circumstantial evidence, and a finding that the offense has

been committed may be based on legitimate inferences from established facts. *People* v. *Robinson,* 306 Mich. 167; *People* v. *Roxborough,* 307 Mich. 575; *People* v. *Heidt,* 312 Mich. 629. In the case at bar the competent evidence was sufficient to justify the trial court in submitting to the jury the question of the guilt of defendant Kanar on the charge set forth in the first count of the information. The motion for directed verdict was, as to the first count, properly denied.

On the examination of Figurski the prosecutor questioned the witness with reference to his testimony given on the preliminary examination and, likewise, as to such testimony on ouster proceedings instituted against defendant Kanar. The statement was made and subsequently repeated, that the purpose was to refresh the recollection of the witness. In the main the witness denied present recollection of specific answers as read by the prosecutor and claimed, in substance, that he was telling the truth on the trial as well as on prior occasions.

Counsel in their briefs discuss at some length the question as to whether the previous testimony of Figurski can be regarded as substantive proof against defendant. On the record as made, however, we do not think that the question as to the competency of such testimony, regarded as substantive proof, is before us. The stenographer who took the testimony on the ouster proceeding was not called as a witness for the purpose of establishing its verity; nor was its verity shown in any other way; nor was the transcript, which the prosecutor was apparently using, offered in evidence, either as to the excerpts read by him, or in its entirety.

Commenting on a somewhat similar situation this court, in *People* v. *Baxter,* 245 Mich. 229, said: "Of

course, the transcript could not be introduced in evidence until proven by the stenographer." See, also, *Job* v. *Railway Co.*, 245 Mich. 353; *Misner* v. *Darling,* 44 Mich. 438; *People* v. *Carr,* 64 Mich. 702.

Figurski's testimony taken on the preliminary examination was not formally offered, nor was there any showing made as to who took and transcribed such testimony. There is nothing in the record indicating that it was brought into the record for any purpose except as stated, that is, to refresh the recollection of the witness. Such prior testimony was not offered as substantive proof. The question as to its competency for such purpose may not, therefore, be determined in this case. As the above discussion of the testimony indicates, it has not been considered in determining the sufficiency of the evidence against defendant.

It is further claimed in appellant's behalf that the trial court erred in the charge to the jury, in failing to apprise the jury fairly of the offense charged, and likewise, in failing to define correctly the law applicable to the charge set forth in the information. Attention is called to the following statement in the charge:

"If you are not satisfied beyond a reasonable doubt that Walter Kanar in any way connected himself with the illegal operation of these businesses, it would be your duty to find him not guilty. But if you find that he failed in any way to carry on the duties of his office, as he was sworn to do when he was chosen as mayor of that city, that he failed in his duty, or that he had knowledge of the fact of these illegal operations and did not carry out his duty, and you should find that he permitted the operation of these various illegal establishments, it would be your duty to find him guilty on the first

count, if you are not satisfied beyond a reasonable doubt that he is guilty of the second count, that is, of receiving compensation for permitting the operation of these various businesses.''

It is claimed, in substance, that the language quoted ignored the fact that defendant was charged with conspiracy to obstruct justice and instructed the jury to return a verdict of guilty if it was found that defendant had failed and neglected to perform the duties of his office. We think the charge quoted is open to the objection that it ignored the necessity of finding the existence of an unlawful combination or agreement constituting the offense of conspiracy. It cannot be said that the jury was not misled into confusing the essential elements of the conspiracy, as set forth in the information, with the alleged purposes thereof. It does not appear that the erroneous charge was subsequently corrected, although the following further statement was made:

''If, on the other hand, you should find that he did have knowledge of the fact, that he permitted them to operate and he conspired with others in permitting them to operate, then I say that it is your duty to find him guilty on the first count. If you should find that he received compensation for permitting these illegal establishments, you may find him guilty on both counts.''

In connection with the latter part of the excerpt from the charge last quoted attention is called by appellant to a prior statement in the charge to the effect that the jury should find defendant guilty on the first count if they convicted him on the second. In view of such prior statement the omission to refer to the conspiracy in connection with the reference to the second count, in the language quoted, is also open to objection.

It should be noted, also, that the trial court, after calling the attention of the jury at the outset of his charge to the fact that the offense was conspiracy, and after defining that term, said further:

"This information is based on two counts, the first count in permitting the illegal operation of these businesses, and the second count permitting the illegal operation of these various businesses with the purpose of receiving compensation for the same."

And further:—

"You may find him guilty on the first count, that is, permitting the illegal operation of these businesses that existed there in Hamtramck, or you may find him guilty on the second count, permitting the illegal operation of these businesses and receiving compensation for the same, or you may find him not guilty."

Considering the charge in its entirety it does not appear that the erroneous instruction, which ignored the nature of the offense charged against defendant, was corrected or that the error was otherwise cured by further specific statements by the court. The rule is well settled in this State that if an erroneous instruction is given on a material matter and the error is not corrected or cured in the charge such error must be regarded as prejudicial. Thus, in *People* v. *Dewitt,* 233 Mich. 222, it was said in applying this rule:

"If the jury followed the first instructions then defendant was convicted under an erroneous understanding of the law. Where conflicting instructions are given, one erroneous and the other correct, we must presume that the jury followed the erroneous instruction. *Silverstone* v. *London Assurance*

*Corp.,* 176 Mich. 525; *People* v. *Eggleston,* 186 Mich. 510; *In re Foerster's Estate,* 193 Mich. 440.''

In *People* v. *Prinz,* 148 Mich. 307, it was said:

''It is doubtless true that the trial judge should, even though no requests be preferred, cover the general features of the case, define the offense, and indicate what it is essential to prove to establish the offense.''

See, also, *People* v. *Place,* 226 Mich. 212; *People* v. *Immonen,* 271 Mich. 384; *People* v. *Tenerowicz,* 266 Mich. 276, 296; *People* v. *Visel,* 275 Mich. 77; *Herzberg* v. *Knight,* 289 Mich. 29; 23 C. J. S. p. 741 *et seq.,* and p. 940 *et seq.; State* v. *Hilsinger,* 167 Wash. 427 (9 Pac. [2d] 357); *Croft* v. *State,* 117 Fla. 832 (158 South. 454).

For the reasons stated we conclude that the charge of the trial court was erroneous and prejudicial to the rights of the defendant. This renders it unnecessary to consider other alleged errors, based on the submission of the second count, now eliminated from the case by the action of the trial court, and the denial of the motion to require the prosecutor to elect between counts.

The verdict and judgment are set aside and the case remanded for new trial.

BUTZEL, C. J., and BUSHNELL, SHARPE, BOYLES, REID, NORTH, and STARR, JJ., concurred.