PEOPLE v SIZEMORE

Opinion of the Court

1. Criminal Law—Evidence—Duty of Prosecution—Disclosure.

The prosecution has an affirmative duty to make known all of the evidence of which it has knowledge bearing on the charged offense, whether favorable or unfavorable to the prosecution, particularly when the evidence is in the possession or control of the prosecution.

2. Criminal Law—Evidence—Appeal and Error—Failure to Produce—Objection.

The prosecution's nonproduction of certain evidence is not reversible error where the defendant knows the prosecution has failed to produce the evidence, the defendant fails to object, and there is no miscarriage of justice.

3. Criminal Law—Self-Defense—Deadly Force—Reasonable Belief—Imminent Danger.

The use of deadly force in self-defense can be justified only where the defendant had a reasonable and honest belief that he was in imminent danger of death or great bodily harm.

4. Trespass—Criminal Law—Deadly Force—Intruder.

The fact that somebody enters another person's home without the owner's permission, and without any legal right to do so, does not ipso facto give rise to a right on the part of the owner to shoot the intruder.

5. Criminal Law—Assault—Defense of Intoxication—Cooley Standard—Capacity Standard—Instructions to Jury.

Instructions to the jury on the defense of intoxication to a charge

References for Points in Headnotes

[1] 29 Am Jur 2d, Evidence § 178.
[2] 4 Am Jur 2d, Appeal and Error § 517.
[3] 6 Am Jur 2d, Assault and Battery §§ 162–164.
[4] 6 Am Jur 2d, Assault and Battery § 80.
[5, 8] 6 Am Jur 2d, Assault and Battery § 51.
[6] 47 Am Jur 2d, Jury § 124 *et seq.*
[7] 21 Am Jur 2d, Criminal Law §§ 107, 108.

of assault with intent to murder, which focused on the erroneous capacity standard (whether the defendant *could* have had the requisite specific intent) instead of the COOLEY standard (whether the defendant *did* have the requisite specific intent) were not reversibly erroneous where the defendant testified that he could not even remember firing his weapon and where the jury had a clear duty to acquit the defendant, under either the capacity or COOLEY standard, if it believed defendant's testimony.

6. CRIMINAL LAW—JURY—THIRTEEN JURORS—REVERSIBLE ERROR.

A defendant is entitled to a reversal of his conviction where 13 jurors rendered a verdict instead of 12; however, a case should be remanded for findings of fact where the record is unclear whether 12 or 13 jurors rendered the verdict.

CONCURRENCE BY M. J. KELLY, P. J.

7. CRIMINAL LAW—DEFENSE OF INTOXICATION—INSTRUCTIONS TO JURY —CAPACITY STANDARD—COOLEY STANDARD.

Instructions to the jury on the defense of intoxication which focused on the erroneous capacity standard instead of the COOLEY standard do not mandate reversal where, although the capacity standard had been held erroneous some three months previously by the state Supreme Court, the defendant failed to object.

DISSENT BY DANHOF, J.

8. CRIMINAL LAW—DEFENSE OF INTOXICATION—INSTRUCTIONS TO JURY —CAPACITY STANDARD—COOLEY STANDARD—ASSAULT—INTENT TO MURDER.

*Instructions to the jury on the defense of intoxication to a charge of assault with intent to murder which referred to the capacity standard (whether the defendant* could *have had the requisite specific intent) instead of the* COOLEY *standard (whether the defendant* did *have the requisite specific intent) were reversibly erroneous where the defendant had contended that his intent was to defend himself and not to murder and where defendant's testimony did not show that he lacked the capacity to form the requisite intent at the time of the offense.*

Appeal from Saginaw, Fred J. Borchard, J. Submitted February 3, 1976, at Lansing. (Docket No. 20615.) Decided June 24, 1976.

Charles E. Sizemore was convicted of assault with intent to murder. Defendant appeals. Remanded for further proceedings.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *E. Brady Denton,* Prosecuting Attorney, and *Peter C. Jensen,* Assistant Prosecuting Attorney, for the people.

*Kathleen M. Cummins,* Assistant State Appellate Defender, for defendant.

Before: M. J. Kelly, P. J., and V. J. Brennan and Danhof, JJ.

Per Curiam. Defendant, Charles E. Sizemore, was convicted by a jury of assault with intent to murder in contravention of MCLA 750.83; MSA 28.278. He was sentenced to serve 10 to 20 years in prison and brings this appeal as of right.

Police Chief Frederick Enos, of the village of Chesaning, was given a restraining order pursuant to divorce litigation to be served upon defendant. Enos testified that just as he was leaving two men reported that the defendant was "running around with a rifle". Chief Enos immediately left for the Sizemore residence where he found only children at home. He then proceeded to another address where he heard that defendant had held a gun on one of the residents. The officer then proceeded back to the defendant's home and this time found defendant's car in the driveway. Chief Enos then proceeded onto the front porch and to the screen door at the main entrance to defendant's house.

At this point, testimony conflicted concerning what happened. Officer Enos testified that he "hollered to Mr. Sizemore" and then opened the door and stood in the threshold. He testified that de-

fendant suddenly appeared with the rifle and fired into the air, at which time he drew his own gun. Enos testified that defendant leveled his gun and shot at Enos who almost simultaneously fired at the defendant. The police chief was hit in the chest and defendant was nicked in the neck.

The defendant testified that he was sitting in his home at a table putting on a pair of cowboy boots when he heard the screen door close. He suddenly heard a noise, was struck in the neck and knocked to the floor. He then claims to have reached for his gun but does not remember whether he shot at the officer or not. Defendant further testified that he had been drinking, and that a short time before he had swallowed a large number of tranquilizing pills.

The screen door of defendant's home was found to have two small holes in it presumably from bullets discharged from defendant's rifle. The door was sent to a crime lab which issued a report stating that human tissue was found around one of the holes. The record does not show that this information was communicated to the prosecutor, although presumably it was. This information was not made available to the defendant.

Defendant brings a number of allegations of error on appeal, three of which merit decisional discussion. Defendant first contends that he was denied a fair trial because evidence regarding the presence of human tissue on the screen door was suppressed by the prosecutor.

The law is settled in Michigan that in a criminal case, the prosecution has an affirmative duty to make known all the evidence of which it has knowledge bearing on the charged offense, whether favorable or unfavorable to the prosecution, particularly when the evidence is in the

possession or control of the prosecution. See *People v McCartney,* 60 Mich App 620; 231 NW2d 472 (1975), and cases cited therein. In the case at bar, the record shows that the defendant requested the production of the test results on the screen door, but the record fails to show any objection to its nonproduction. Since this error could have been corrected by objection, absent a showing of a miscarriage of justice, we will not reverse. See *People v Murry,* 59 Mich App 555; 229 NW2d 845 (1975). See also GCR 1963, 529.1 and MCLA 769.26; MSA 28.1096.

Both prosecution and defense seem to agree that the question of whether Chief Enos had entered defendant's home, as defendant claimed, or whether he was merely standing in the doorway, as the prosecution claims, was a crucial issue with regard to defendant's claim of self-defense. The defendant seems to contend that his theory of self-defense is somehow strongly bolstered by showing that the officer had actually entered his house. We cannot agree with this reasoning. The law in Michigan is well settled that the use of deadly force in self-defense can only be justified where the defendant had a reasonable and honest belief that he was in imminent danger of death or great bodily harm. *People v Meert,* 157 Mich 93; 121 NW 318 (1909). The fact that somebody may enter another person's home without the owner's permission, and without any legal right to do so, does not ipso facto give rise to a right on the part of the owner to shoot the intruder. Defendant's counsel correctly stated the law in his closing arguments, of which the following excerpt is instructive:

"Now, when you go to a house to talk to somebody, you don't walk in the door unless you are invited. And he, from his own testimony, opened that screen door.

No question about it. He opened that screen door and stood on the threshold. What right does he have to go in that house? What right? I am not saying if a person walks in somebody's house you have a right to shoot them because you don't. If somebody walks in your house tomorrow, you don't have a right to shoot that person. There is no question about it."

Thus, for a defendant to make out a claim of self-defense, he would need to contend and show that he had an honest and reasonable belief that he was in imminent danger of death or great bodily harm. In the case at bar, defendant did not so contend. Defendant testified that he could not remember shooting Chief Enos at all. There is nothing in the record to show that defendant had anything to fear from anyone. The laboratory report concerning the screen door only tends to show that Chief Enos may have been standing inside the door rather than in the threshold. Under the facts and circumstances of this case, we think that the question of whether Chief Enos was standing in the threshold or just inside the front door was of little or no consequence. We hold that the failure of the prosecution to make available to the defense the laboratory report on the screen door did not cause a miscarriage of justice, and moreover was harmless beyond a reasonable doubt. See *People v Roberson,* 55 Mich App 413; 222 NW2d 761 (1974).

Defendant next contends that the trial judge committed reversible error by incorrectly instructing the jury on the intoxication defense. The record discloses that the trial judge instructed the jury as follows:

"I further charge you that the crimes of assault with intent to do murder and assault with intent to do great bodily harm less than the crime of murder are crimes

of specific intent. If the defendant's mental faculties
were so far overcome by intoxication or drugs that he
was not conscious of what he was doing or did not know
what he was doing, then he cannot entertain that
specific intent and there being no such intent, the
crimes of assault with intent to murder or assault with
intent to do great bodily harm, less than murder, could
not have been committed."

Defendant contends that this instruction was re-
versibly erroneous in that it focused on a "capac-
ity" standard, such as was expressly disapproved
in *People v Crittle,* 390 Mich 367; 212 NW2d 196
(1973). It is apparent that the trial judge's instruc-
tions were remarkably similar to the instructions
given in *Roberts v People,* 19 Mich 401 (1870),
which were disapproved in *Crittle.* In *Crittle,* the
defendant was convicted of armed robbery and
sentenced to serve 25 to 50 years in prison. The
evidence was clear that the defendant was intoxi-
cated at the time, and his sole defense was that he
had intended to pull an April Fool's joke. His
defense, therefore, was not that he lacked the
*capacity* to form the requisite criminal intent, but
rather that he had a *different* intent. Under such
circumstances, it is clear that a capacity instruc-
tion would deprive the defendant of his only de-
fense, by not allowing the jury to find that, al-
though he *could* have had the requisite intent,
nevertheless he *did not* have the intent. In the
case at bar, however, defendant testified that he
could not even remember firing his weapon. If the
jurors had found defendant's testimony credible,
they would have concluded that defendant *did not*
have the requisite criminal intent because he
*could not* have formed the intent. Under either a
capacity instruction or a COOLEY instruction, there-
fore, the jurors had a clear duty to acquit if they
had found the defendant's testimony credible. We

therefore fail to see how defendant could have been prejudiced by the trial judge's instructions. We conclude that the error was harmless beyond a reasonable doubt. See *People v Christensen,* 64 Mich App 23; 235 NW2d 50 (1975).

Defendant next contends that he was denied his right to a fair trial because 13 jurors rendered a verdict in the case. The record is confusing at this point. The record shows that there were 13 jurors chosen in the beginning, and that a juror was dismissed prior to the beginning of jury deliberations. The original record shows only that the jury was polled, without recording verbatim the polling procedure. Three pages of what appears to be a supplementary record, and which purports to record the polling procedure, have been filed with the transcript but were not attached thereto and were not sworn to by the court reporter. The prosecution seeks to have us consider an affidavit by one of the jurors that she did not deliberate with the other members of the jury. While we view the purported supplementary transcript with a good deal of suspicion, we consider this issue primarily one of fact rather than of law. If 13 jurors did in fact render a verdict, defendant is entitled to a reversal. *McRae v The Grand Rapids, L & D R Co,* 93 Mich 399; 53 NW 561 (1892).

If the trial court determines in fact that only 12 jurors rendered a verdict, defendant's conviction will be affirmed.

Remanded for proceedings not inconsistent with this opinion.

M. J. KELLY, P. J. *(concurring).* I think the critical question on the *Crittle* issue is the failure to object. *Crittle* was written in November of 1973 and this trial took place in February of 1974. It is

one thing to say that the *Crittle* error constituted manifest injustice and required reversal without an objection. It is quite another thing to say that a later case involving the same error mandates reversal. That would require the assumption that the defense attorney, the prosecutor and the trial judge did not read the Supreme Court advance sheets and were not bound by its released decisions. One can ponder the public's reaction to such an appellate court holding in the beleaguered criminal justice system. We should not provide such an appellate parachute.

I concur in the per curiam opinion.

DANHOF, J. *(dissenting)*. I vote to reverse.

After reading the instructions as a whole in the present case, it appears the only instructions given by the trial court relating to intoxication are set forth *in toto* by the majority. Those instructions read in relevant part:

"If the defendant's mental faculties were so far overcome by intoxication or drugs that he was not conscious of what he was doing or did not know what he was doing, then he cannot entertain that specific intent and there being no such intent, the crimes * * * could not have been committed."

*People v Crittle,* 390 Mich 367, 374; 212 NW2d 196 (1973), gives some specific examples of the capacity standard. Among them is "he was not conscious of what he was doing" and "did not know what he was doing".

It is apparent the instructions in the present case only refer to the capacity standard and, as such, violate *Crittle.*

The majority opinion states, "In the case at bar, however, defendant testified that he could not even

remember firing his weapon". From this, the majority seems to infer that the defendant testified that he lacked the capacity at the time of the offense to form the requisite intent. This is not a permissible inference. The statement literally means that the defendant's state of mind at the trial, *i.e.* his memory, was faulty. The statement has nothing to do with the defendant's intent at the time of the offense. Moreover, it is not at all clear from the record that the defendant did not remember firing the gun.

The *Crittle* case may not be distinguished from the instant one on its facts. The defendant in *Crittle* argued that he intended an April Fool's joke, not the specific intent for armed robbery. In the present case, the defendant's main argument was that his intent was to defend himself from an aggressor, not to murder. This is almost the entire thrust of his testimony. There is also testimony that he had been drinking, but not that he lacked the capacity to form the requisite intent. Therefore, as in *Crittle,* the defendant was arguing that he had an intent different from that required for the offense.

Accordingly, I would conclude that the present case must be reversed because of the clear violation of *Crittle, supra,* in the trial court's instructions.