PEOPLE v McDANIELS

OPINION OF THE COURT

1. HOMICIDE—SELF-DEFENSE—DUTY TO RETREAT—ONE'S OWN HOME—
CO-DWELLERS IN HOME.
    There is no duty for a defendant to retreat from an assailant
    when in the defendant's own home before the defendant may
    invoke the defense of self-defense to a homicide charge even
    where the assailant is a co-dweller in the home.

2. COURTS—COURT OF APPEALS—CASE PRECEDENT.
    A ruling of the Court of Appeals is binding on trial judges until
    either another panel of the Court of Appeals disagrees or until
    the Supreme Court says otherwise.

3. CRIMINAL LAW—HOMICIDE—INSTRUCTIONS TO JURY—APPEAL AND
ERROR—FAILURE TO OBJECT—SELF-DEFENSE.
    A defendant has a right to have a properly instructed jury pass
    upon the evidence; therefore, where a defense attorney failed to
    request a jury instruction that a defendant to a homicide
    charge had no duty to retreat from an assailant when in the
    defendant's own home and did not object to the trial judge's
    instruction which stated that the defendant did have such a
    duty to retreat, the issue of the improper instruction may still
    be considered by the Court of Appeals.

DISSENT BY M. J. KELLY, J.

4. CRIMINAL LAW—APPEAL AND ERROR—INHERENT POWER—FAILURE
TO OBJECT—INSTRUCTIONS TO JURY—SELF-DEFENSE.
    *The inherent power of an appellate court to review even if error*
    *has not been preserved is to be exercised sparingly, under*
    *unusual circumstances, and only to cure manifest and serious*
    *error; the failure of a trial judge to give the correct instruction*

REFERENCES FOR POINTS IN HEADNOTES
[1] 40 Am Jur 2d, Homicide §§ 167, 168.
[2] 20 Am Jur 2d, Courts § 183 et seq.
[3] 40 Am Jur 2d, Homicide § 520.
[4] 5 Am Jur 2d, Appeal and Error §§ 623, 817.

*on self-defense and the duty to retreat was not so significant an error as to warrant reversal of a defendant's conviction where there was no objection and no request for a proper instruction at the trial.*

Appeal from Recorder's Court of Detroit, Robert Evans, J. Submitted May 10, 1976, at Detroit. (Docket No. 24692.) Decided August 4, 1976.

Arthur McDaniels was convicted of second-degree murder. Defendant appeals by leave granted. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training & Appeals, and *Ronald P. Weitzman,* Assistant Prosecuting Attorney, for the people.

*Milton R. Henry,* for defendant.

Before: R. M. MAHER, P. J., and M. J. KELLY and D. C. RILEY, JJ.

R. M. MAHER, P. J. On April 2, 1970, defendant Arthur McDaniels was convicted by a jury of second-degree murder contrary to MCLA 750.317; MSA 28.549, and was subsequently sentenced to a prison term of from six to ten years.

He appeals, by leave granted, claiming reversible error on the part of the trial court in its instructions to the jury on defendant's claim of self-defense.

Defendant killed his wife in the bedroom of their marital home on March 19, 1968. He testified that he called his wife from work on that day and asked her to bring him a shirt. When she failed to do so, he returned home from work, lay down on

their bed, and fell asleep. A little while later, she returned home in a very intoxicated state and woke him up. He asked about the shirt and her whereabouts. She didn't answer, but had what he called a "wild look" in her eyes. She then left the bedroom, and defendant proceeded to dress. She then returned with a knife and threatened to kill him. She attacked him, cutting his jacket with the knife. He grabbed his nearby gun and pulled the trigger just once. He threw the knife that she had used to attack him into the oven, then went to a gas station and called the police.

A police detective testified that the knife was found in the oven and that the blood on it was decedent's.

Defendant's entire defense to the murder charge was self-defense: he was defending himself from his wife's murderous assaults.

Because defendant was the only eyewitness to the offense, the prosecutor, by "shooting holes" in defendant's story, attempted to prove that the killing was murder. He pointed out that defendant shot his wife nine times. The prosecutor also showed that defendant allowed his wife access to both the knife and gun used even though defendant claimed that he was afraid of his wife because she had "a thing" for knives, and that he hid all the knives because he was afraid. The prosecutor attempted to show that defendant killed his wife because she drank and went out with other men. Wherever the truth may lie, the record clearly shows that the marriage was a troubled and unhappy one.

The trial judge instructed the jury, in part, as follows:

*"There is a requirement that there be no way open to*

*the defendant to retreat at all.* Self defense then is
proper in this case and is the right to every person, but
justification for taking human life depends on the coex-
istence of the three conditions. First, that he was not
the aggressor bringing on the difficulty as I just pointed
out, second, there must have existed at the time of the
fatal blow in the defendant's mind a presence of an
impending necessity to strike such a blow in order to
save himself from death or great bodily harm and third,
*there must be no way open for the defendant to retreat
or avoid the conflict."* (Emphasis added.)

No objection was voiced at trial but on appeal
defendant claims reversible error in that defend-
ant was under no duty to retreat since he was in
his own home when the shooting occurred.

We agree and reverse the defendant's conviction.

Plaintiff concedes that the instruction com-
plained of here can no longer be properly given in
Michigan. See *People v Lenkevich,* 394 Mich 117;
229 NW2d 298 (1975), but argues that in 1970, the
year of defendant's trial, the instruction was per-
missible.

We need not decide whether the holding of
*Lenkevich* should be retroactively applied. The
Supreme Court acknowledged in that case that it
had never directly ruled on the issue of whether
one dweller was obliged to retreat in the face of an
attack by a co-dweller. While recognizing a split of
authority nationwide on the issue, the Court held
that the better rule was one that required no
retreat, even when the assailant was defendant's
co-dweller. The Court pointed to language in an
earlier case, *People v Stallworth,* 364 Mich 528;
111 NW2d 742 (1961), to indicate that it believed
Michigan law supported this view.

More important to our decision here is the sta-
tus of the law in 1970, the year of defendant's

trial. In *People v McGrandy,* 9 Mich App 187; 156 NW2d 48 (1967), this Court spoke to the issue, recognized it as one of first impression in this state and found no duty to retreat in one's own dwelling although the assailant be a co-dweller. *Lenkevich* duplicated both the reasoning and the holding of *McGrandy.*

As of the date of defendant's trial, no other panel of this Court had reached any different conclusion and the trial court was duty-bound to follow it. A ruling of this Court is binding on trial judges until either another panel disagrees or until the Supreme Court says otherwise. See *Hackett v Ferndale City Clerk,* 1 Mich App 6; 133 NW2d 221 (1965).

Defense counsel in *McGrandy* requested the court to instruct the jury that defendant had no duty to retreat. No such request and no objection was voiced in the instant case, but this is of no moment. In *People v Liggett,* 378 Mich 706, 714; 148 NW2d 784 (1967), the Supreme Court said:

"It is settled law of this State that the trial judge should instruct the jury in criminal cases as to general features of the case, define the offense and indicate that which is essential to prove to establish the offense, even in the absence of request. A case may be reversed because the charge omits a legally essential ingredient. *People v Prinz,* 148 Mich 307 [111 NW 739 (1907)]; *People v Kanar,* 314 Mich 242, 254 [22 NW2d 359 (1946)]; *People v Hearn,* 354 Mich 468 [93 NW2d 302 (1958)]. Similarly, without a request, a case may be reversed because of an erroneous or misleading charge as opposed to one which merely omits a pertinent though not legally necessary point. *People v Mac-Pherson,* 323 Mich 438, 448, *et seq.* [35 NW2d 376 (1949)]; *People v Guillett,* 342 Mich 1, 7 [69 NW2d 140 (1955)]; *People v Oberstaedt,* 372 Mich 521, 526 [127 NW2d 354 (1964)]. Defendant has a right to have a

properly instructed jury pass upon the evidence. *People v Visel,* 275 Mich 77, 81 [265 NW 781 (1936)]."

Reversed and remanded for a new trial.

D. C. Riley, J., concurred.

M. J. Kelly, J. *(dissenting).* On March 19, 1968, the defendant pumped seven shots into his 25-year-old wife in the bedroom of their home on Lesure Avenue in the City of Detroit at about 6 o'clock in the evening. The police arrived about 9 o'clock in the evening and searched the living room, both bedrooms and the basement for a weapon. They found none. The woman's body lying face down in the den, head toward the living room and feet toward the bedroom, was clothed only in bra and panties. Defendant told the police and neighbors that he had called his wife from work, asked her to bring a bowling shirt and she didn't. He had come home in anger and his wife wasn't there. He waited for her and when she arrived they had an altercation. He testified at trial that she lunged at him with a knife in her hand and he backed up fast enough to get out of the way. He then testified that after he shot her:

"She still had the knife in her hand and she looked at me and I took the knife out of her hand and called the police and told them what had happened. Going through the kitchen, I realized the knife was still in my hand and I throwed it into the oven and I left out the door and I stopped at Mrs. Diamond's house and told her that the back door was open and that the police would come in there and I proceeded back to my car, got in the car and I don't know exactly where I was going, but I wound up at the gas station."

The nine wounds on the body were caused when

the defendant fired a seven-shot automatic by pulling the trigger, releasing, pulling again and again repeatedly, until the weapon was entirely emptied. Two of the bullets penetrated parts of her body twice.

The wife did not wound the husband. The blood on the knife was the wife's blood. If she had been holding a knife apparently the blood from her own wounds dripped onto it. The jury certainly did not have to believe that she was holding a knife.

At any rate the statement defendant made to witnesses Willie and Teresa Cannon that:

"He said he had an argument and he was about to leave the house and she stabbed him, at him, and he got his gun and he fired."

was proven untrue in part. She did not stab him. She may have stabbed at him.

Deciding this case on the question of the precedential value of *People v Lenkevich,* 394 Mich 117; 229 NW2d 298 (1975), as urged by the defendant I consider totally inappropriate. Deciding the case as the majority does on the precedential value of *People v McGrandy,* 9 Mich App 187; 156 NW2d 48 (1967), I consider inappropriate for two reasons.

First because had this appeal been properly processed, the instruction in question could certainly have been considered at least arguably correct under the analysis of the Court of Appeals in its unpublished per curiam opinion in *People v Lenkevich,* Docket No. 12275, released March 22, 1973. Not precedentially but logically. In other words a panel of our Court came to the conclusion that the same instruction given by the trial judge in *People v Arthur McDaniels, Jr.* in the Record-

er's Court did not require reversal where not objected to at trial.

The Recorder's Court Judge in *Lenkevich* instructed:

"And, third, that there must have been no way open whereby she could have retreated, as it appeared to her at the time of the stabbing to a place of safety and thus avoid the conflict." 394 Mich at 120.

Does that impel the conclusion that the trial judge below erred reversibly by not giving *sua sponte* the now correct Cardozo instruction quoted by Justice COLEMAN in *People v Lenkevich, supra,* at 121? I would hold that it emphatically does not.

Furthermore this whole area of appellate review should not be lightly invoked. The so-called inherent power rule should be exercised sparingly, under unusual circumstances, and only to cure manifest and serious error. *People v Mack,* 64 Mich App 587, 595; 236 NW2d 523 (1975) (Judge KELLY dissenting). I am convinced beyond a reasonable doubt reading this record that the jury considered the self-defense claims of this defendant as makeweight and frivolous. The jury was properly charged on both second-degree murder and manslaughter. There was no objection to the charge on self-defense.

The second reason I would affirm I have recently written to in *People v Sizemore,* 69 Mich App 672; 245 NW2d 159 (1976):

"I think the critical question on the *[People v] Crittle* [390 Mich 367; 212 NW2d 196 (1973)], issue is the failure to object. *Crittle* was written in November of 1973 and this trial took place in February of 1974. It is one thing to say that the *Crittle* error constituted manifest injustice and required reversal without an

objection. It is quite another thing to say that a later case involving the same error mandates reversal. That would require the assumption that the defense attorney, the prosecutor and the trial judge did not read the Supreme Court advance sheets and were not bound by its released decisions. One can ponder the public's reaction to such an appellate court holding in the beleaguered criminal justice system. We should not provide such an appellate parachute."

The same logic applies in this case. *McGrandy* was published in December of 1967 and this trial took place three years later. With the proliferation of opinions from this Court we are deluding ourselves if we hold to every practitioner and every judge knowledge of a volume of opinions containing precedent which I am ready to say bench and bar in large majority do not even read, let alone totally recall. It is folly for us to zero in on points of law which have not been brought to the trial judge's attention or instructions to charge which have not been requested or instructions which have been approved by trial counsel and to predicate reversible error sometimes many years later.

This defendant had a fair trial, he was well represented and he was very properly jury convicted. We should not in the appellate tower of theoretical perspective impute ubiquitous knowledge of existing precedent to the bench and bar of the state by historical hindsight.

I would affirm.