**HOOVER BALL AND BEARING COMPANY, INC., a corporation; Hoover-Ugine Company, a partnership; Cefilac of America, Inc., a corporation; and Allendale Mutual Insurance Company, a corporation, Plaintiffs,**

v.

**PINKERTON'S, INC., a corporation; Federal Insurance Company, a corporation, Defendants.**

**No. G78–461CA5.**

United States District Court,
W. D. Michigan, S. D.

Oct. 28, 1980.

Robins, Davis & Lyons by James D. Steiner and Lawrence Zelle, Minneapolis, Minn., Smith, Haughey, Rice & Roegge by Laurence D. Smith, Grand Rapids, Mich., for plaintiffs.

Butzbaugh, Page, Butzbaugh & Dewane by John E. Dewane, St. Joseph, Mich., Bax-

ter & Hammond by William S. Farr, Grand Rapids, Mich., for defendant Pinkerton's.

Seymour, Seymour, Conybeare & Straub by Bruce C. Conybeare, St. Joseph, Mich., for Federal.

## OPINION AND ORDER

BENJAMIN F. GIBSON, District Judge.

This is a diversity action. The undisputed facts of this case are that, on July 23, 1977, Jeffrey Sunday was an employee of defendant Pinkerton's in the capacity of Fire Prevention Guard. As such, Sunday was assigned to guard plaintiff Hoover's Bridgeman Plant. On the date in question, Sunday willfully and deliberately started a fire on the premises which resulted in an explosion causing extensive property damage. Sunday was apparently seeking a vehicle by which to gain the respect and praise of his employer and girlfriend and thought that he could do so by setting a fire and putting it out. Defendant Federal Insurance Company issued a $10,000 bond to Pinkerton's as required by the provisions of MCLA 338.1059(1).

Subsequent to these events, plaintiff filed this action which is grounded in breach of contract and negligence. In addition, Count III and a portion of Count V of the Complaint seek to hold defendants Pinkerton and Federal Insurance strictly liable for the acts of Pinkerton's employee under the provisions of the Private Security Guard Act, MCLA 338.1067 and 338.1059.

The parties are presently before the Court on defendant Pinkerton's motion for partial summary judgment as to the plaintiffs' claims for vicarious liability for the willful and malicious acts of Sunday and for strict liability under the provision of MCLA 338.1067. In addition, defendant Federal Insurance has filed a motion for summary judgment as to that portion of the Complaint which seeks to hold it liable for the willful and malicious acts of Sunday under the provisions of MCLA 338.1059. Both motions are filed pursuant to Fed.R.Civ.P. 56(c). The applicable portion of the rule reads as follows:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56.

To warrant the grant of summary judgment, the moving party bears the burden of establishing the non–existence of any genuine issue of fact that is material to a judgment in his favor. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 147, 90 S.Ct. 1598, 1603, 26 L.Ed.2d 142 (1970); *United States v. Articles of Device . . . Diapulse*, 527 F.2d 1008, 1011 (6th Cir. 1976).

In deciding the instant motions, this Court, sitting in diversity, is required to determine the substantive law of the State of Michigan with respect to both the concept of vicarious liability and the sections of the Private Security Guard Act at issue in this case. In performing that task, this Court is bound by the clear and unambiguous holding in *Ruth v. Bituminous Casualty Corp.*, 427 F.2d 290 (6th Cir. 1970). In *Ruth*, the Court of Appeals held that federal courts sitting in diversity cases are bound to follow the law expressed by the highest state court. In the absence of any opinion of the highest state court; however, we are bound to follow those decisions of intermediate state appellate courts which are published. The only apparent exception to this rule is circumstances presented which would lead the federal court to be convinced that the highest state court would decide the case differently from the opinion expressed by the intermediate appellate court. This Court further notes that the *Ruth* court declined to apply the exception to the rule in a situation where the Michigan Supreme Court had denied leave to appeal from the decision of the Michigan Court of Appeals.

In addition to the pronouncement of the Sixth Circuit, the Michigan Court of Appeals has held that a decision of any division of that Court is controlling state wide

in any trial court until such time as there is either a contrary holding on the identical issue by another panel or where the division's decision is later reversed by the Michigan Supreme Court. *Hackett v. Kress*, 1 Mich.App. 6, 133 N.W.2d 221 (1965); *People v. McDaniels*, 70 Mich.App. 469, 245 N.W.2d 793 (1976); *Monfils v. City of Sterling Heights*, 84 Mich.App. 330, 269 N.W.2d 588 (1978).

In light of these principles, this Court now considers the law of Michigan as expressed in *Watson v. Aquinas College*, 83 Mich.App. 192, 268 N.W.2d 342 (1978), *lv. den.*, 403 Mich. 848 (1978), the only case decided under the applicable provisions of the Private Security Guard Act. The applicable sections of the Act state in pertinent part as follows:

A licensee [Pinkerton's] may employ as many persons as he deems necessary to assist him in his work as alarm system contractor or private security guard or agency and in the conduct of his business, and at all times during the employment *may* be accountable for the good conduct in the business of each person so employed. (emphasis added)

MCLA 338.1067(1).

... The bonds shall be taken in the name of the people of the State, and a person injured by the willful, malicious and wrongful act of the licensee or any of his agents or employees *may* bring an action on the bond or insurance policy in his own name to recover damages suffered by reason of the act. (emphasis added)

MCLA 338.1059.

The *Watson* court, under factual circumstances almost identical to those at issue, held that Section 1067(1) was merely a codification of common law principles of an employer's vicarious liability for the acts committed by his agents, employees, etc. Relying then upon the principle that there is no vicarious liability for intentional or reckless torts committed by an employee which are beyond the scope of the principal's business [*Bradley v. Stevens*, 329 Mich. 556, 46 N.W.2d 382, 34 A.L.R.2d 367 (1951)], the Court affirmed an apparent grant of summary judgment to defendants. As a necessary part of that holding, the Court of Appeals must have found, sub silencio, that a security guard who sets a fire on premises he is employed to protect is acting beyond his scope of employment. Such a holding would be consistent with the recent Michigan Court of Appeals decision in *Bozarth v. Harper Creek Board of Educ.*, 94 Mich.App. 351, 288 N.W.2d 424 (1979). In *Bozarth*, the court held that "the mere fact that an employee's employment situation may offer an opportunity for a tortious activity does not make the employer liable to the victim of that activity." 94 Mich.App. at 355, 288 N.W.2d at 426.

■ In accordance with the *Watson* decision as it pertains to defendant Pinkerton's, this Court must hold as a matter of law that defendant Pinkerton's is not liable to plaintiff for the willful and malicious acts of Jeffrey Sunday and that defendant Pinkerton's is not strictly liable under the provisions of MCLA 338.1067(1). Insofar only as the complaint seeks recovery under either of these two theories, defendant Pinkerton's motion for partial summary judgment must be granted. The plaintiff is, of course, free to proceed on other theories of negligence and breach of contract as enumerated in the complaint and Pinkerton's may still be held liable under Section 1067(1) should any other common law of theory of liability be proven.

■ This Court next considers defendant Federal's motion for summary judgment, relying again on *Watson*. In order for the *Watson* court to reach its decision with respect to the liability of the licensee (in this case Pinkerton's) it interpreted the word "may" in § 1067(1) as being a permissive codification of common law principles. Without any further analysis of the word "may" as used in § 1059, the Court also affirmed the grant of summary judgment to the defendant licensee's insurer. In reaching this conclusion the Court of Appeals must have held, again sub silencio, that the language pertaining to the insurer's liability for the "willful, malicious and wrongful act of the licensee or any of his

agents or employees" was applicable only in a situation where those willful or malicious acts were within the scope of the agent's employment. In other words, it is the apparent decision of the *Watson* court that the insurer or bondholder is only liable to the same extent as the licensee employer. If the willful, malicious or wrongful act is committed within the scope of the employment then both the licensee and the insurer or bonding company are liable. If the act was outside the scope of employment then the licensee and insurer or bonding company can be held liable only under some common law theory.

While this Court disagrees with the Michigan Court of Appeals' statutory interpretation of § 1059 with respect to the liability of the bonding company, this Court is clearly bound to uphold that decision absent another panel's contrary decision or reversal by the Michigan Supreme Court.

This Court believes that the interpretation of § 1059 vitiates the entire purpose of that section. The Act, as a whole, is preceded by the announced intention of the Michigan Legislature to protect the public. The longstanding common law rule that an employer is not vicariously liable for the acts of its agent, employee, etc. which are outside the scope of employment combined with the usual holding that willful and intentional torts were outside the scope of employment left injured persons with no remedy for such abuses. It is the opinion of this Court that it was precisely this problem and that the Legislature sought to correct by requiring a fund from which relief could be obtained. It follows that this is why the enactment of § 1059 specifically provides for an action on the bond for "willful, malicious and wrongful acts of the licensees' agents or employees."

Since there were no actions on bonds or direct actions against insurers at common law, the *Watson* decision with respect to the liability of the insurers seems particularly anomalous. This Court believes that instead the Legislature was intending a result analogous to the situation in *Detroit Automobile Inter–Insurance Exchange v. United Bonding Insurance Co.*, 15 Mich.App. 481, 166 N.W.2d 651 (1969). In that case, plaintiff brought suit under a statute which required collection agencies to acquire a bond for the benefit of all persons who were injured by the wrongful taking of money collected by the agency. The statute (MCLA 445.204) further provided that injured persons "may" bring an action on the bond. In interpreting this similar type of statute, that panel of the Court of Appeals stated:

> The construction of this statute is, that when all else fails, there is still an action under the statutory bond.... The purpose is to protect the public in dealing with a collection agency from losses occasioned by a conversion of funds. It was the obvious intent of the Legislature in enacting the statute that sureties would become responsible under the bond for such losses. Any other construction would disregard the legislative intent and defeat one of the main reasons for its enactment.

Contrary to the opinion in *Watson*, this Court believes that the word "may" as used in § 1059 was inserted as a throw back to MCLA 600.2923 which generally allows direct actions on bonds and sets forth the requirements of such an action. The *Watson* court's conclusion that the use of the word signals permission would not negate this reasoning.

Unfortunately, this Court is not free to rule in accordance with its own interpretation of the Michigan statute. Accordingly, defendant Federal's motion for summary judgment must also be granted but only to the same extent as defendant's Pinkerton's since Federal may still be liable, under the reasoning of the *Watson* court, if any other cause of action against Pinkerton's is proven.

IT IS SO ORDERED.