## PEOPLE *v.* LAMSON

1. APPEAL AND ERROR—EVIDENCE—OBJECTION—PRESERVING QUES-
   TION.

   Timely objection at trial to the introduction of evidence which
   is allegedly improper is a prerequisite to review of any error
   on appeal.

2. EVIDENCE—POLYGRAPH TEST—ADMISSIBILITY.

   Results of polygraph tests are not admissible in evidence.

3. EVIDENCE — TESTIMONY — POLYGRAPH TEST — REFERENCE —
   ADMISSIBILITY.

   Allowing a police polygraph operator to testify as to what a
   defendant told him in the police station was not reversible
   error where defense counsel made no objection at trial to
   the testimony of the polygraph operator and where the state-
   ments had no such prejudicial effect as to constitute a mis-
   carriage of justice.

4. WITNESSES—IMPEACHMENT—CONTRADICTION.

   The rule that a party may not impeach his own witness does
   not prevent him from proving the truth of material facts
   by other testimony, even though the effect of the other testi-
   mony is to contradict directly the testimony of the witness
   in question.

Appeal from Kalamazoo, Wade Van Valkenburg,
J. Submitted Division 3, February 4, 1970, at Grand

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 601.
[2] 29 Am Jur 2d, Evidence § 831.
    Physiological or psychological truth and deception tests.  23 ALR2d
    1306.
[3] 5 Am Jur 2d, Appeal and Error § 797.
[4] 58 Am Jur, Witnesses § 797.

Rapids. (Docket No. 7,197.) Decided February 27, 1970.

Bruce J. Lamson was convicted by a jury of attempted armed robbery. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Donald A. Burge,* Prosecuting Attorney, and *Lawrence C. Reddy,* Assistant Prosecuting Attorney, for the people.

*Dalm & Smith,* for defendant on appeal.

Before: HOLBROOK, P. J., and DANHOF and ROOD,* JJ.

DANHOF, J. Defendant was convicted by a jury of attempted armed robbery of the Ideal Beer Store, CLS 1961, § 750.529 (Stat Ann 1969 Cum Supp § 28.797) and CL 1948, § 750.92 (Stat Ann 1962 Rev § 28.287), and sentenced to a term of four to five years in prison.

On appeal he alleges several errors in the conduct of the trial. First he argues that it was error to reveal before the jury that the defendant refused to make a statement to the police.

At the trial the prosecutor questioned a police detective as follows:

"*Q.* Now, what was this conversation about?

"*A.* The conversation was relative to the possibility of his being involved in an attempted armed robbery at the Ideal Beer Store.

"*Q.* All right, and what did the defendant say?

"*A.* He didn't admit anything to me concerning the robbery."

---

* Circuit Judge, sitting on the Court of Appeals by assignment.

The prosecutor questioned another police officer as follows:

"*Q.* Did you ask him another question?

"*A.* I asked him again did he understand his rights and he didn't answer. And I said, 'Having these rights in mind, do you wish to talk to us now?' And he shook his head no."

No objection was made to the questions or answers by defense counsel and no motion to strike the testimony or request for curative instructions was made. The prosecutor did not comment on defendant's silence and the court gave the usual cautionary instructions relative to defendant's failure to take the stand. *People* v. *Webb* (1968), 13 Mich App 625, is directly in point. A timely objection at trial to the introduction of allegedly improper evidence is a prerequisite to appellate review. See also *People* v. *Rudder* (1970), 21 Mich App 201.

Defendant also alleges that references to a polygraph examination, polygraph room, and another offense constituted a miscarriage of justice. The allegedly objectionable testimony follows:

*Direct Examination*

"*By Mr. Dwan:*

"*Q.* What is your occupation, Mr. Camburn?

"*A.* Detective, Kalamazoo Police Department.

"*Q.* How long have you been a detective for the Kalamazoo Police?

"*A.* Nine years.

"*Q.* All right, what are your duties?

"*A.* Polygraph examiner.

"*Q.* Did you have occasion to talk to the defendant on September 6, 1968?

"*A.* Yes, I did.

"*Q.* And where was that?

"*A.* At the police station.

"*Mr. Dwan:* May we approach the bench, your Honor?

"*The Court:* Surely.

(*Attorneys approached the bench.*)

"*Q.* Now, the time that you spoke with the defendant, that was not during a polygraph examination was it?

"*A.* No.

"*Q.* Were you functioning as a polygraph examiner at that time?

"*A.* No.

"*Q.* Do you know who Bruce Lamson is?

"*A.* Yes.

"*Q.* Is he in court today?

"*A.* Yes, he is. That's the defendant.

"*Mr. Dwan:* May the record indicate the witness has correctly identified the defendant?

"*The Court:* All right, it may so indicate.

"*Q.* Now, what was this conversation about?

"*A.* The conversation was relative to the possibility of his being involved in an attempted armed robbery at the Ideal Beer Store.

"*Q.* All right, and what did the defendant say?

"*A.* He didn't admit anything to me concerning the robbery. He acknowledged that he was arrested for this offense. I talked to him about the Buntline Special that had been obtained from his apartment. He told me he did have that in his possession, however, he would not tell me who he got it from because he didn't want to get anybody in trouble. I told him previously that the Buntline Special that had been picked up had been implicated in another offense.

"*Mr. Dwan:* I have no further questions of this witness at this time, your Honor.

"*The Court:* All right, any questions, Mr. Scott?

### Cross-Examination

"By Mr. Scott:
  "Q. Where were you in the police department
when he gave this statement?
  "A. Sir?
  "Q. Where were you in the police department
when he gave this statement?
  "A. I'm not sure. It was either in the polygraph
room or in the jail. I talk to many people in this
capacity many times in the polygraph room, many
times in the jail itself. There's a room in there that
we use, too. I don't know on this particular instance
which it was.
  "Q. If it was in the polygraph, why would it
have been there?
  "A. That's my office.
  "Mr. Scott: Okay. I have no further questions.
  "The Court: That's all.
  "Mr. Dwan: I have nothing further, your Honor.
              (Witness stepped down.)".

There can be no doubt at present that in this
jurisdiction the results of polygraph examinations
are inadmissible, People v. Frechette (1968), 380
Mich 64, 68. However, defense counsel made no
objection at trial to the testimony of detective
Camburn. Under such circumstances, and consider-
ing the whole of detective Camburn's testimony, we
do not find it to have such a prejudicial effect, if
any, as to constitute a miscarriage of justice, People
v. Tyrer (1969), 19 Mich App 48.

The critical questions on this appeal concern the
testimony of defendant's 11-year-old sister, Paula,
and the prosecution's efforts to either discredit or
contradict it. The prosecution apparently hoped to
establish that the hat with fringes worn by the
would-be bandit, which blew off as he fled, belonged
to defendant's sister. When called as a witness for

the people, Paula said that the hat was not hers and did not look like her hat.

The prosecutor then recalled officer Hicks to testify as to what Paula had previously said about the hat. This colloquy then took place between Mr. Scott, the defense attorney, and Mr. Dwan, the assistant prosecuting attorney:

"*Mr. Scott:* Just a minute, your Honor, doesn't that call for hearsay? It's his witness and he's asking to impeach his own witness with more testimony. How can you do that with hearsay evidence?

"*Mr. Dwan:* There's a statute which allows impeachment of the people's witnesses, which we are using at this time.

"*Mr. Scott:* Even if he does so, it wasn't within the presence of the defendant, and I'm a little hard-pressed to make a very big issue out of it but this is an 11-year-old child. I don't think that this is really necessary to proceed with.

"*Mr. Dwan:* Your Honor, it's an 11-year-old child and her brother is the defendant and if she does not tell the truth on the stand we have a right to impeach her. If she testifies to something she said different at this time, it certainly is admissible.

"*The Court:* Well, I think I'll let him answer. You've got a peculiar situation there but—all right, you can answer it.

"*A.* The little girl identified that hat there as being 'their Mexican straw hat.'"

On appeal defense counsel argues (a) that defendant's sister was not a *res gestae* witness and so could not be impeached under CL 1948, § 767.40a (Stat Ann 1954 Rev § 28.980[1]); (b) that if she was a *res gestae* witness, no proper foundation was laid for her impeachment; and (c) that regardless of (a) and (b), the trial court failed to instruct the jury that the impeachment testimony of officer

Hicks as to the prior inconsistent statement of Paula Lamson was being admitted solely for the purpose of impeachment and not as substantive evidence. Defense counsel did not request such an instruction, and in fact when asked by the trial court if anything had been overlooked following the giving of instructions responded, "no." However, appellate defense counsel quite properly cites *People* v. *Eagger* (1966), 4 Mich App 449, for the proposition that even in the absence of a request to charge the jury, such an omission constitutes reversible error.

On appeal the prosecution no longer contends that Paula was a *res gestae* witness and therefore subject to impeachment. Rather, the prosecutor's position now is that Paula was not impeached, merely contradicted; and that this is permissible on the authority of *People* v. *Lee* (1943), 307 Mich 743.

The Court in the *Lee* case said:

"The rule against impeaching one's own witnesses does not mean that the party is bound to accept such testimony as correct. He may prove the truth of material facts by other testimony, even though the effect thereof is directly to contradict the testimony of his own witnesses."

We do not construe that language to mean that the prosecutor could put the police officer on the stand to impeach Paula's testimony by testifying to her prior inconsistent statement. It would allow the prosecution to introduce testimony, if available, as to the ownership of the hat even though it contradicted Paula's testimony. For example, testimony of a store clerk saying she remembered Paula buying a hat, and this was the hat, would have been admissible.

It follows that we must reverse this case because hearsay testimony was admitted over objection which was prejudicial to the defendant.

Defendant also alleged that the trial court improperly instructed the jury. No objection was made at the time, and we find no error in the introductory remarks of the trial court, despite defense counsel's criticism of them on appeal.

Of importance, though, is defendant's assertion that the trial court did not instruct on the essential elements of the crime of attempted armed robbery. The trial court read the statute defining armed robbery to the jury and told them that the defendant was charged with attempting to violate that statute. However, he did not charge the jury on the necessity of finding an overt act to support a conviction for attempt to commit a crime. *People* v. *Bowen* (1968), 10 Mich App 1. While this omission does not always constitute reversible error, upon retrial the instruction should be given. *People* v. *Gardner* (1968), 13 Mich App 16.

Reversed and remanded for a new trial.

All concurred.