PEOPLE v KOHLER

Docket No. 53859. Submitted October 21, 1981, at Detroit.—Decided
    November 23, 1981.

John W. Kohler, Jr., was convicted of manslaughter and posses-
    sion of a firearm during the commission of a felony, Monroe
    Circuit Court, William J. Weipert, Jr., J. Defendant appeals,
    alleging that the victim's forcible entry into the home in which
    the defendant was an occupant gave him the right to shoot the
    victim and that the trial court erred in its instructions to the
    jury. *Held:*

1. The defendant's use of deadly force to repel the intruder
    was not justified as a matter of law by the forcible entry in and
    of itself.

2. The trial court erred in instructing the jury that in order
    to justify the use of deadly force an assault upon the defendant
    was necessary in addition to the forcible entry. There is no
    such requirement. A forcible entry is enough to justify the use
    of deadly force where the occupant fears for his safety and
    where there is no alternative means of preventing the entry.

3. The failure of the trial court to instruct the jury that a
    prior inconsistent statement used to impeach a witness could
    not be used as substantive evidence requires reversal where the
    prosecutor did comment to the jury that the statement was
    substantive evidence of the defendant's guilt.

*Reversed and remanded.*

1. Homicide — Self-Defense — Unlawful Entry.

An unlawful entry into another person's home without any right
    to do so does not *ipso facto* give rise to a right on the part of
    the occupant to shoot the intruder; in order for the occupant to
    make out a claim of self-defense he must show that he had an

References for Points in Headnotes

[1-3] 40 Am Jur 2d, Homicide § 174.
[2, 3] 40 Am Jur 2d, Homicide § 175.
[4] 75 Am Jur 2d, Trial § 906.
[5, 6] 75 Am Jur 2d, Trial §§ 747, 860.
   81 Am Jur 2d, Witnesses § 599.

honest and reasonable belief that he was in imminent danger of death or great bodily harm.

2. HOMICIDE — SELF-DEFENSE — DEADLY FORCE — FORCIBLE ENTRY.

Deadly force used by an occupant of a dwelling to repel an entry is not justified as a matter of law if the occupant can otherwise arrest or repel the assailant.

3. HOMICIDE — SELF-DEFENSE — DEADLY FORCE — FORCIBLE ENTRY.

An illegal entry, when forcible, is enough in and of itself to justify the use of deadly force where the occupant fears for his safety and there is no alternative means of preventing entry; there is no requirement of a separate assault upon the occupant after the forcible entry in order to justify the use of deadly force.

4. CRIMINAL LAW — JURY INSTRUCTIONS — FAILURE TO OBJECT.

An error in jury instructions is not waived by a defendant's failure to object to the instructions where the trial court improperly instructed the jury on the law of the case.

5. EVIDENCE — PRIOR INCONSISTENT STATEMENTS — JURY INSTRUCTIONS — RULES OF EVIDENCE.

Inconsistent out-of-court statements of a witness are admissible only for impeachment purposes and cannot be used as substantive evidence of the truth of the matter asserted; where such a prior statement has been admitted for impeachment purposes the trial judge should instruct the jury that the prior statement cannot be used as substantive evidence (CJI 4:5:01; MRE 801[d]).

6. CRIMINAL LAW — JURY INSTRUCTIONS — EVIDENCE — PRIOR INCONSISTENT STATEMENTS.

Failure of a trial judge to instruct the jury that a prior inconsistent statement of a witness cannot be used as substantive evidence requires reversal of a defendant's conviction except where the following three conditions are met: (1) there is no request for a limiting instruction; (2) there is no demonstration or likelihood of prejudice; and (3) neither the court nor the prosecutor has suggested to the jury that the prior inconsistent statement could be used as substantive evidence.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Michael W. LaBeau,* Prosecuting Attorney, and *James G. Petrangelo,* Assistant Prosecuting Attorney, for the people.

*Nora J. Pasman* and *John Nussbaumer,* Assistant State Appellate Defenders, for defendant on appeal.

Before: T. M. Burns, P.J., and M. F. Cavanagh and R. A. Benson,* JJ.

Per Curiam. Defendant appeals as of right his June 12, 1980, convictions by a jury of manslaughter, MCL 750.321; MSA 28.553, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). On July 25, 1980, defendant was sentenced to a term of 2 to 15 years imprisonment for the manslaughter conviction and given a consecutive 2-year sentence for the felony-firearm conviction.

On the night of the shooting, defendant was staying at the home of his girlfriend. The deceased, Leroy Miller, was an old boyfriend of the defendant's girlfriend. The defendant knew that Miller was currently being sued by another man for injuries suffered as the result of a physical beating inflicted by the deceased.

On the evening of the shooting, Miller pushed his way into the home of the defendant's girlfriend and dumped beer on the defendant, his girlfriend, and one of their guests. He removed a television set from the apartment while it was playing and tried to make numerous other forcible entries. After the victim left, the defendant retrieved a shotgun from his car and notified the police of the incident.

After the police left, the defendant's girlfriend locked the apartment's outer storm door and secured both the regular bolt lock and the chain lock on the inner door. She and the defendant went to

---

* Circuit judge, sitting on the Court of Appeals by assignment.

bed in the master bedroom adjacent to the front door.

Shortly after going to bed, the couple heard the front door being pulled open. The defendant put his pants on and grabbed his gun. They then heard the inner door being forced open and flying across the room. The defendant testified that as he heard the door fly open, he saw parts of the door moulding fly into his bedroom. The defendant then saw Miller and "pulled the trigger".

The defendant had his girlfriend call the police and an ambulance. The police found Miller lying on the floor breathing and defendant sitting on the bed in the bedroom. The defendant admitted shooting Miller. The police noticed that the inside door had been damaged with the entire board on one side of the door ripped off the wall. The lock mechanism and striker plate from the wall had been torn loose and were scattered on the floor.

Defendant raises three issues on appeal. He first argues that as a matter of law Miller's forcible entry gave defendant the right to shoot him. An unlawful entry into another person's home without any right to do so does not *ipso facto* give rise to a right on the part of the occupant to shoot the intruder. *People v Sizemore*, 69 Mich App 672, 676; 245 NW2d 159 (1976). In order for the occupant to make out a claim of self-defense, he must show that he had an honest and reasonable belief that he was in imminent danger of death or great bodily harm. *Id.*, 677. Deadly force cannot be used by an occupant of a dwelling to repel an entry if the occupant "can otherwise arrest or repel the assailant". *Pond v People*, 8 Mich 150, 177 (1860). Defendant's contention that a violent breaking and entering is sufficient in and of itself to justify shooting the intruder as a matter of law is errone-

ous. The defendant's use of deadly force must have been "absolutely necessary" and without alternative. Accord, *Pond,* 177, *People v Oster (On Resubmission),* 97 Mich App 122, 132; 294 NW2d 253 (1980). Defendant was not, therefore, innocent as a matter of law.

The defendant next argues that the trial court erred in instructing the jury that the defendant had no right to shoot Miller without a further assault by Miller subsequent to the entry. The jury was instructed that in order for the defendnt to have acted in self-defense, he must have acted out of a fear of death or serious bodily harm due "to an assault upon him by Leroy Miller". The judge restated the need for a finding of an assault by Miller upon the defendant to justify the use of deadly force and added that an illegal entry does not itself give the defendant a right to shoot the intruder.

These instructions may have misled the jury. They require a separate assault "upon the defendant" over and above the forcible entry. Such a requirement is not the law in Michigan. An occupant in fear of death or serious bodily harm may use deadly force to prevent or repel a forcible entry if no other alternative is available. *Pond, supra,* 177. There is no requirement that a separate subsequent assault be committed "upon the defendant" when the intruder enters forcibly. The actual forcible entry can be enough in and of itself to put the occupant in fear of death or serious bodily harm. The trial court's instructions that the jury had to find the defendant "was assaulted by Leroy Miller" and that an illegal entry "does not by itself give that person the right to shoot the intruder" imposed the requirement of a separate assault subsequent to the entry. An illegal entry,

when forcible, is enough in and of itself to justify the use of deadly force when the occupant fears for his safety and there is no alternative means of preventing entry. The occupant need not wait for the intruder to commit a separate "assault upon him" and the jury should have been so instructed.

Although the defendant did not object to the improper instructions at trial, the error is not waived when the trial judge improperly instructed the jury on the law of the case. *People v Cooper,* 73 Mich App 660, 662; 252 NW2d 564 (1977), *People v Lenkevich,* 394 Mich 117, 123; 229 NW2d 298 (1975).

Defendant finally argues that the trial judge erred by not giving curative instructions after the prosecutor argued to the jury that hearsay statements used to impeach a witness could be used as substantive evidence of guilt.

Inconsistent out-of-court statements of a witness are admissible only for impeachment purposes and, since they would otherwise be hearsay, cannot be used as substantive evidence of the truth of the matter asserted. *People v White,* 401 Mich 482, 510; 257 NW2d 912 (1977). When a prior inconsistent statement has been admitted in order to impeach a witness, the trial judge should instruct the jury that the prior statement, not made under oath during the trial, cannot be used as substantive evidence of guilt. See CJI 4:5:01; MRE 801(d).

In *People v Eagger,* 4 Mich App 449; 145 NW2d 221 (1966), and in *People v Lamson,* 22 Mich App 365; 177 NW2d 204 (1970), this Court ruled that failure of a trial court to give such an instruction *sua sponte* is reversible error. This position was modified in *People v Mathis,* 55 Mich App 694, 697; 223 NW2d 310 (1974), where the Court added a three-part qualification to the automatic reversal rule of *Eagger* and *Lamson:*

"Where * * * there is no request for a limiting instruction, where there is no demonstration or likelihood of prejudice and where neither the court nor the prosecutor has suggested to the jury that the prior inconsistent statement could be used as substantive evidence, the trial judge's omission does not require a reversal."

The instant case, however, does not satisfy this three-part exception to the automatic reversal rule. Although there was no request for a limiting instruction, the prosecutor did comment to the jury that the prior inconsistent statement was substantive evidence of guilt. Accordingly, the failure of the trial court to instruct the jury that it could not use the impeachment evidence as substantive evidence of guilt requires reversal.

Reversed and remanded for a new trial.