*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CHARLES BUFFORD BURNS, JR.,

Defendant-Appellant.

UNPUBLISHED
December 28, 2023

Nos. 359317; 359318; 359319
Cass Circuit Court
LC Nos. 20-010225-FH; 20-
010226-FH; 20-010227-
FH

Before: MURRAY, P.J., and CAMERON and PATEL, JJ.

PER CURIAM.

In these consolidated[1] appeals, defendant appeals as of right his multiple jury trial convictions. In Docket No. 359317, defendant was convicted of unlawful imprisonment, MCL 750.349b; assault by strangulation or suffocation, MCL 750.84; and assault with a dangerous weapon (felonious assault), MCL 750.82. The trial court sentenced defendant to 10 to 15 years' imprisonment for unlawful imprisonment, seven to 10 years' imprisonment for assault by strangulation, and three to four years' imprisonment for felonious assault.[2]

In Docket No. 359318, defendant was convicted of third-offense domestic violence, MCL 750.81, and sentenced to three years and two months to five years' imprisonment. In Docket No. 359319, defendant was convicted of assault by strangulation, MCL 750.84; and felonious assault, MCL 750.82. He was sentenced as a fourth-offense habitual offender, MCL 769.12, to 12 years

---

[1] *People v Burns*, unpublished order of the Court of Appeals, entered November 23, 2021 (Docket Nos. 359317; 359318; 359319).

[2] Defendant was originally sentenced to 19 to 40 years' imprisonment for unlawful imprisonment; 12 years and eight months to 30 years' imprisonment for assault by strangulation; and four years and 10 months to 15 years' imprisonment for felonious assault. Because the prosecutor failed to notify defendant of its intent to seek an enhanced sentence, the trial court later resentenced defendant on these convictions.

and 10 months to 30 years' imprisonment for assault by strangulation, and four years and 10 months to 15 years' imprisonment for felonious assault. Finding no error regarding defendant's convictions and sentences, we affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

These cases arise from a series of attacks on the victim by defendant. The two lived together off-and-on in 2019 and 2020. On several occasions, they smoked methamphetamine and drank alcohol. While living with defendant, the victim reported numerous violent acts by defendant. Defendant was arrested and charged. These appeals followed his jury trial convictions.

## II. PRIOR INCONSISTENT STATEMENT

Defendant's first argument relates to the interplay of certain testimony at trial. He contends that the trial court abused its discretion when it denied the admission of the victim's alleged prior inconsistent statement because he claims the statement was admissible under MRE 613. He also argues that defense counsel was ineffective for failing to challenge the prosecutor's objection to the testimony. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

We review the trial court's decision to admit evidence for an abuse of discretion. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). A court abuses its discretion when its "decision falls outside the range of principled outcomes." *People v Magnant*, 508 Mich 151, 161; 973 NW2d 60 (2021).

Preliminary questions of law, such as whether a statute or rule permits the admission of evidence, are reviewed de novo. *Lukity*, 460 Mich at 488. "[I]t is an abuse of discretion to admit evidence that is inadmissible as a matter of law." *Id*. Further, "[t]he rules of evidence are interpreted according to the principles of statutory interpretation. Accordingly, if the plain language of a rule of evidence is unambiguous, we must enforce the meaning expressed, without further judicial construction or interpretation." *People v Snyder*, 301 Mich App 99, 104-105; 835 NW2d 608 (2013) (quotation marks and citations omitted).

Defendant also claims defense counsel was ineffective for failing to properly respond to the prosecutor's objection regarding MRE 613. Because defendant did not move the trial court for a new trial or request a *Ginther*[3] hearing, this issue is unpreserved. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). "The question of whether a defendant was denied the effective assistance of counsel is a mixed question of fact and constitutional law. Questions of fact are reviewed for clear error and questions of constitutional law are reviewed de novo." *People v Loew*, 340 Mich App 100, 119-120; 985 NW2d 255. Where the ineffective-assistance-of-counsel issue is not preserved, this Court's review "is limited to errors apparent on the record." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

## B. LAW AND ANALYSIS

Defendant's admissibility argument relies on two exchanges during trial. The first exchange was during defense counsel's cross-examination of the victim:

*Q.* You weren't wanting this case pursued?

*A.* No.

*Q.* Did you tell anybody that the incidents didn't occur?

*A.* No, I—um, I think I just say it [sic] to what—to, um, an officer when I was arrested just not too long ago.

*Q.* You told an officer that—that it didn't occur?

*A.* No, I didn't say that, but—

*Q.* What did—

*A.* —something in that lines [sic], I guess.

*Q.* —what did you tell them?

*A.* I was bein' a smartass and I said—I know I said, um, well, you can say I lied—lied if you want to, I don't care; that's what I said, something like that.

*Q.* You said you could tell 'em I lied, I don't care?

*A.* Um-hum.

*Q.* And what were you meaning by that?

*A.* I just didn't want him to ruin his whole life over this crazy incident.

*Q.* Okay, do you remember what officer you told that to?

*A.* I don't know his name, but he's bigger—he was the one at Pam—Pam—Pam Waterson's house incident, that officer.

\* \* \*

*Q.* Okay. Did you tell anybody else that it didn't happen?

*A.* Huh-uh

*Q.* You didn't tell anybody that, you know, you had made it up because you thought [defendant] cheated on you?

*A.* No, never.

The second exchange occurred during defense counsel's direct examination of defendant's mother. Specifically, defense counsel asked defendant's mother whether the victim ever told her that the allegations in this case were false:

> *A.* She talked to me about it and said it wasn't true.
>
> *Q.* She said it wasn't true?
>
> *A.* That's what she said.
>
> *Q.* What did she say, specifically?

The prosecutor objected on the basis of inadmissible hearsay and the trial court sustained the objection.

MRE 613 concerns the admission of prior inconsistent statements. It reads, in relevant part:

> Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(d)(2). [MRE 613(b).]

Such statements "are admissible only for impeachment purposes and, since they would otherwise be hearsay, cannot be used as substantive evidence of the truth of the matter asserted." *People v Kohler*, 113 Mich App 594, 599; 318 NW2d 481 (1981). To impeach a witness on the basis of a prior inconsistent statement, the proponent should first establish a proper foundation "by questioning the witness concerning the time and place of the statement and the person to whom it was allegedly made." *People v Rodriguez*, 251 Mich App 10, 34; 650 NW2d 96 (2002).

Defendant claims on appeal that he laid the proper foundation to admit the victim's prior inconsistent statement under MRE 613. In his view, the victim's denials during cross-examination were adequate for admission of this statement. Looking to defense counsel's cross-examination of the victim, counsel plainly did not ask the victim about "the time and place of the statement." Nor did counsel ask the victim to whom she allegedly made the statement. By neglecting to elicit this line of questioning, defense counsel failed to lay the proper foundation for the victim's purported prior inconsistent statement. Therefore, the trial court did not abuse its discretion in denying admission of the statement.

Alternatively, defendant argues that defense counsel was ineffective for failing to properly respond to the prosecutor's objection to the admission of this prior statement. "Trial counsel is presumed effective, and defendant must overcome a strong presumption that a trial counsel's performance was sound trial strategy." *Loew*, 340 Mich App at 120. A successful ineffective-assistance-of-counsel argument requires a showing "that counsel's representation fell below an objective standard of reasonableness" and that the defendant "was prejudiced by counsel's

-4-

performance." *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015) (quotation marks and citation omitted). "Ineffective assistance of counsel cannot be predicated on the failure to make a frivolous or meritless motion." *People v Riley*, 468 Mich 135, 142; 659 NW2d 611 (2003).

Again, the victim's prior inconsistent statement was inadmissible because defense counsel failed to lay the proper foundation during cross-examination of the victim. Any argument by defense counsel challenging the trial court's denial of the prior inconsistent statement would have been meritless. Therefore, defense counsel was not ineffective.

### III. PROSECUTORIAL ERROR

Defendant next argues that he was denied a fair trial because of prosecutorial error.[4] He claims that during rebuttal closing argument, the prosecutor inflamed the jury by alleging for the first time that defendant sold methamphetamine to the victim. Alternatively, defendant claims defense counsel was ineffective for failing to object to the prosecutor's statements. We disagree.

### A. PRESERVATION AND STANDARD OF REVIEW

A defendant preserves a claim of prosecutorial error by making a timely and specific objection to the prosecutor's conduct. *People v Unger*, 278 Mich App 210, 234-235; 749 NW2d 272 (2008). Defendant did not object to the prosecutor's statements during closing arguments. Therefore, this issue is unpreserved for our review. *Id.* Unpreserved claims of prosecutorial error are reviewed for plain error affecting substantial rights. *People v Abraham*, 256 Mich App 265, 274; 662 NW2d 836 (2003). "Reversal . . . is warranted only when a plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.* at 274-275.

Defendant also argues defense counsel was ineffective for failing to object to the prosecutor's statements. Because defendant did not move for a new trial on this basis or request a *Ginther* hearing, this issue is unpreserved for our review. *Heft*, 299 Mich App at 80.

### B. LAW AND ANALYSIS

Defendant's challenge arises from the following statement by the prosecutor to the jury during rebuttal closing arguments:

> Let's talk abut [sic] [defendant]. [Defendant] was living in a two[-]bedroom camper that was put there in the '50s, according to him. He says that throughout this time period there were up to six people living there, at many different times

---

[4] Defendant identifies the prosecutor's actions as "prosecutorial misconduct." This phrase is a misnomer for any actions not involving violations of the rules of professional conduct or illegal activity by the prosecutor. *Cooper*, 309 Mich App at 87-88. Instead, these lesser violations should be called "prosecutorial error." Because defendant does not allege violations of the rules of professional conduct or illegal activity by the prosecutor, we refer to the challenged actions as "prosecutorial error."

they would flop through there when he was using meth . . . all these people coming through, and that was when [the victim] was around, also. He's got a camera system on his camper that he's living in. So all these people are living in and out of this camper. *And why are they going there? Because they were getting their meth from [defendant]*.

When you think about domestic violence, when you think about that abusive relationship, when you think about why a person who's being savaged and beaten, choked over and over again, why is this person going back? You heard the testimony from the officers about their experience in dealing with cases of domestic violence, and that they've seen this over and over again where it might not make sense, but you have this domestic relationship and this victim, even though she's been put through all this, she's going to keep going back to him. *Now when you add the component of methamphetamine into that, because where do you think that she was getting her meth from? Same place all those other people were getting it from. They were getting it from [defendant], and it's an extremely addictive drug and they're coming back, and that's one more aspect of control that he has over her.* [Emphasis added.]

According to defendant, these statements amounted to prosecutorial error because there was "[n]ot one shred of evidence introduced at trial" indicating defendant provided methamphetamine to the victim.

Throughout trial, the prosecutor attempted to elicit an admission from defendant and other witnesses that defendant was supplying house guests with methamphetamine. These attempts were unsuccessful. Therefore, the prosecutor's remarks during rebuttal argument impermissibly expanded the record. Although we are troubled by the prosecutor's argument, we conclude that it is not cause for reversal. Again, reversal in cases on unpreserved prosecutorial error is only warranted if it results in the conviction of an actually innocent defendant or the error "seriously affected the fairness, integrity, or public reputation" of the proceedings. *Abraham*, 256 Mich App at 274-275. Here, defendant does not contend he was actually innocent. Similarly, the purported error did not affect the fairness, integrity, or public reputation of the proceedings. Indeed, the jury was instructed that the arguments made by the attorneys did not constitute evidence. "Jurors are presumed to follow their instructions, and it is presumed that instructions cure most errors." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). Defendant's unsupported allegation that the prosecutor's statement was so "inflammatory" to the jury is insufficient to overcome this presumption. Because the jury was properly instructed, defendant's contention that defense counsel was ineffective for failing to object to the prosecutor's statement is also meritless. *Riley*, 468 Mich at 142.

## IV. DEPARTURE SENTENCE

Defendant next argues the trial court erred when it exceeded the minimum sentencing guideline range and sentenced defendant to 10 to 15 years' imprisonment for unlawful imprisonment. We disagree.

## A. STANDARD OF REVIEW

A trial court's sentencing decision is reviewed for an abuse of discretion. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). A court abuses its discretion if the sentence is not "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id*. at 460 (quotation marks and citation omitted). Although the sentencing guidelines are highly relevant to the question of reasonableness of a sentence, the guidelines do not carry with them a presumption that a departure sentence is unreasonable. *Id*. at 475. Rather, "the key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range . . . ." *Id*. (quotation marks and citation omitted).

## B. LAW AND ANALYSIS

"[T]o facilitate appellate review," of a departure sentence, the trial court must "include[] an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017).

> [R]elevant factors for determining whether a departure sentence is more proportionate than a sentence within the guidelines range continue to include (1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines but given inadequate weight . . . . [*Id*. (citations omitted).]

Where a trial court "has abused its discretion in applying the principle of proportionality by failing to provide adequate reasons for the extent of the departure sentence imposed," this Court "must remand to the trial court for resentencing." *Steanhouse*, 500 Mich at 476.

The trial court articulated its justification of its departure sentence, stating:

> [W]hen I look at the evidence that . . . I saw at the trial . . . the treatment that you put the victim through in this matter is probably . . . the worst that I've ever been involved with; I'm sure there are . . . worse, but the worst that I've been involved with either as prosecutor or attorney or judge.
>
> Obviously, the thing that's concerning about these cases as well is it wasn't a one-time incident, it was an incident . . . that happened in January, then another incident in April, and another incident in July which resulted in a . . . number of cases and . . . really just some very, very severe injuries that were inflicted on the victim here. And again, I think some of that was pointed out by the prosecutor; you had hit her with a bat, you had burned her with a torch, you had struck her with some objections [sic], you'd actually . . . locked her and screwed the door shut in the house so that she couldn't leave. At one point she was thrown out of a vehicle naked, and . . . then you actually went, when she was finally able to escape, you . . . were searching her out, and . . . it appeared you[r] intention was to bring her back and keep her . . . under your control.

And so when I look at the cases, I know your attorney has indicated that based on good behavior in prison, that the Court should sentence you at the bottom of the guidelines; I believe that based on the actions that you've taken, that the Court actually needs to deviate in your case, and it needs to do an upward deviation. And what I'm going to do is based on the seriousness, and again, the fact that there were three separate incidents, at least that were charged, and the severity of the injuries, the you know, burning her with . . . fire, hitting her with a ball bat, all of these on different occasions, and the way that you tried to manipulate her and keep her under your control, I believe that a . . . departure above the guidelines is appropriate. And so you're very fortunate here, Mr. Burns, and . . . it's interesting because . . . it's more a procedural issue; when I look at these three files . . . they were all filed by the prosecutor's office on the same date . . . They were all on the docket at the same time, they were all prelim'd [sic] at the same time, and so for you to not know that the prosecutor had wanted you sentenced as an habitual fourth[-]offender is almost disingenuous. I understand the procedural aspect of it because the notice wasn't filed; I understand that aspect of it, but for . . . you to believe that you that . . . for some reason on two files they didn't they didn't want to file a habitual[-offender notice], it's almost disingenuous and . . . it's a procedural issue and the Court is going to sentence you accordingly, and that's why the Court even addressed the top ends of the guidelines based on . . . the stipulation. But when I look at the fact that the way these files were all tracked, there . . . couldn't have been any indication here, and when you look at your prior record, there's not any indication that you would not have known that you were subject to those habitual fourth charges. You're not going to be sentenced that way on these charges as well, however, but I think your prior record is horrendous, as the prosecutor indicated.

Defendant contends that the trial court's reasoning for an upward departure was not proportionate to the offense or defendant as the offender because the trial court considered factors already considered in the scoring of the guidelines when it assessed points for offense variable (OV) 3, OV 7, and OV 10. We will address each of defendant's challenges in turn.

Defendant's first argument that OV 3 already accounted for the severity of the victim's injuries is meritless. Defendant was assessed 10 points for OV 3. A trial court assesses 10 points under OV 3 (physical injury to victim) for a victim's "[b]odily injury requiring medical treatment[.]" MCL 777.33(1)(d). OV 3 accounts for the infliction of physical injury but does not address the extent of those injuries. Instead, the term "bodily injury" "encompasses anything that the victim would, under the circumstances, perceive as some unwanted physically damaging consequence." *People v McDonald*, 293 Mich App 292, 298; 811 NW2d 507 (2011). Further, the term "requiring medical treatment" "refers to the necessity for treatment and not the victim's success in obtaining treatment." *People v Maben*, 313 Mich App 545, 551; 884 NW2d 314 (2015), citing MCL 777.33(3) (quotation marks omitted). Any number of bodily injuries, including a sprained ankle, are included in this definition.

In this case, defendant could not be assessed a higher score because the victim's injuries were not life threatening or permanently incapacitating.[5] This does not mean that the degree of the victim's injuries was not serious. The trial court explained that defendant had assaulted the victim several times, which resulted in extensive and severe injuries. Specifically, defendant hit her with a bat and burned her with a blow torch. The trial court sufficiently justified that the sentencing guidelines did not account for the severity of the victim's injuries. Therefore, the trial court did not abuse its discretion when it cited the seriousness and extent of the victim's injuries to rationalize the upward departure from the sentencing guidelines under OV 3.

Similarly, defendant's argument that OV 7 already accounted for the severity of the victim's treatment is unpersuasive. OV 7 (aggravated physical abuse) only provides for two scores: 50 and 0 points. MCL 777.37. Defendant was assessed 50 points. An offense is assessed 50 points for OV 7 when a "victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a). This is an either-or proposition; that is, a trial court can assess zero or 50 points under OV 7. Therefore, a defendant who treats a victim with sadism, torture, or excessive brutality in one incident is assessed the same point value as a defendant, like defendant in this case, who repeatedly subjects his victim to multiple acts of aggravated physical abuse. For purposes of a departure, the trial court is permitted to consider factors the guidelines give inadequate weight or those which are not considered at all. *Dixon-Bey*, 321 Mich App at 525. Here, the trial court explained that defendant had inflicted severe injuries on the victim during several assaults—three charged and several uncharged. While defendant was assessed points under OV 7, the trial court explained that this assessment did not factor in the extent of the aggravated physical abuse in this case. The trial court sufficiently explained that the sentencing guidelines undervalued the extent of defendant's aggravated physical abuse towards the victim, and, therefore, justified why the imposed sentence was more proportionate than a different sentence would have been. See *id*.

Defendant also contends that OV 10 was assessed 10 points and adequately accounted for defendant's control and manipulation of the victim. OV 10 (exploitation of vulnerable victim) is assessed 10 points when the "offender exploited a . . . domestic relationship[.]" MCL 777.40(1)(b). "Exploit," means "to manipulate a victim for selfish or unethical purposes." MCL 777.40(2)(b). The trial court explained that defendant "tried to manipulate [the victim] and keep her under [his] control." It noted a time when defendant threw the victim out of a vehicle naked, as well as another instance where defendant went searching for the victim after she had escaped his house. Unlike OV 3 and OV 7, the trial court did not explain how this conduct was distinct from other exploitative conduct giving rise to an assessment of 10 points for OV 10. This Court will not substitute its own judgment when the trial court fails to justify its reasoning for departure. See *People v Smith*, 482 Mich 292, 304; 754 NW2d 284 (2008). Although the trial court did not explain its upward departure for OV 10, the trial court adequately explained its reasoning as to the other variable. Therefore, we are not convinced the trial court abused its

---

[5] A trial court assesses 25 points under OV 3 accounts for a victim's "[l]ife threatening or permanent incapacitating injury[.]" MCL 777.33(1)(c).

discretion in granting an upward departure under OV 10 and resentencing is not necessary on this basis. See *Dixon-Bey*, 321 Mich App at 525.

Defendant further argues that the trial court, in rationalizing its upward departure, inappropriately considered that there were three separate incidents for which defendant was convicted because this was accounted for in the sentencing guidelines' assessment of 20 points for prior record variable (PRV) 7. PRV 7 (subsequent or concurrent felony convictions) may be assessed a maximum of 20 points for two or more subsequent felony convictions. See MCL 777.57(1)(a). Defendant was assigned the maximum 20 points under PRV 7 because defendant had been convicted of more than two concurrent felonies. The trial court explained that defendant was convicted for three separate incidents in this case. These three incidents gave rise to five felony convictions. This is more than double the required felony convictions necessary to score 20 points under PRV 7. The trial court explained that the sentencing guidelines gave inadequate weight to defendant's concurrent offenses; this was a sufficient explanation for why the departure sentence was proportionate.

Defendant next argues that the trial court did not consider mitigating factors such as his intellectual disability and addiction fueled by tragedy. But, the trial court was not required to consider such mitigating factors when it sentenced him. See *People v Osby*, 291 Mich App 412, 416; 804 NW2d 903 (2011). The trial court did not abuse its discretion.

Finally, defendant contends that the trial court improperly relied on defendant's successful motion for resentencing because the prosecution failed to provide notice of its intent to seek an enhanced sentence. The trial court explained that defendant's argument for resentencing was "almost disingenuous" because all three of defendant's files were docketed together and had a joint preliminary examination hearing, meaning that the trial court believed that defendant was aware that he was prosecuted as a fourth-offense habitual offender. This was not offered as a justification for the trial court's upward departure. Instead, the trial court was merely commenting that defendant benefitted from the prosecutor's error.

In sum, the majority of the trial court's articulated reasons support its upward departure from the sentencing guidelines. The sentencing guidelines did not account for the seriousness and severity of defendant's conduct in this case, particularly with regard to the victim's injuries. The trial court's reliance on the number of convictions involved in these incidents was also appropriate. However, the trial court did not properly justify why it departed from the sentencing guidelines based on defendant's control and manipulation of the victim when it assessed points under OV 10. Regardless, the trial court's explanation of its assessment of points under OVs 3 and 7 sufficiently justified its upward departure. For these reasons, we conclude that the trial court properly established by reference to matters of record that its departure sentence was "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Steanhouse*, 500 Mich

at 474. Accordingly, the trial court did not abused its discretion in applying the principles of proportionality to justify its upward departure from the sentencing guidelines.

Affirmed.

/s/ Christopher M. Murray
/s/ Thomas C. Cameron
/s/ Sima G. Patel